IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2015

**BYRON BECTON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 10-04987     James C. Beasley, Jr., Judge**

_____

**No. W2014-00993-CCA-R3-PC  -  Filed June 23, 2015**

_____

The petitioner, Byron Becton, appeals the denial of post-conviction relief from his 2011 Shelby County Criminal Court jury convictions of aggravated rape, claiming that he was denied the effective assistance of counsel at trial.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and NORMA MCGEE OGLE, J., joined.

Brooks Stevenson, Memphis, Tennessee, for the appellant, Byron Becton.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The evidence at the petitioner's jury trial revealed that, between 7:00 and 7:30 p.m. on December 16, 2009, the victim left her Memphis residence on foot, intending to purchase marijuana from a friend.  *State v. Byron Becton*, No. W2011-02565-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Jackson, Mar. 11, 2013).  While en route to her friend's house, the victim was approached by the petitioner, who inquired whether she knew where he "'could go and sit and get high?'"  *Id.*  The victim indicated an abandoned house nearby and continued walking.  *Id.*  The petitioner then grabbed the victim and pushed a sharp object against her back, threatening to kill her if she did not comply.  *Id.*

The petitioner forced the victim into an abandoned house, keeping one arm around her neck and continuing to press something sharp against her back.  *Id.*, slip op. at

3. The petitioner led the victim into "'the first bedroom on the left'" and struck the victim. *Id.* The victim struggled to fend off the petitioner as he continued to strike her with his fist and choke her; the petitioner also beat the victim with a nearby light fixture. *Id.*, slip op. at 3-4. When the victim was unable to continue fighting, the petitioner ordered her to remove her clothing. *Id.*, slip op. at 4. The petitioner then repeatedly penetrated the victim's vagina with a nearby beer bottle. *Id.*

Afterwards, the petitioner ordered the victim to remove his own clothing, and he forced her to perform fellatio on him. *Id.* After "a few minutes," the petitioner "proceeded to get on top of [her] and have sex with [her]." *Id.* The victim gave the petitioner a fake name and told him that she would be "'his girlfriend'" in "an attempt to convince the [petitioner] to let her leave the house alive." *Id.*, slip op. at 5. Eventually, the petitioner agreed to let the victim leave, and the victim left her bra behind as she got dressed. *Id.* The petitioner and victim parted ways at a bridge near the victim's house. *Id.*, slip op. at 6. The petitioner walked toward a nearby Mapco, and the victim ran to her residence, where she told her fiancé what had transpired. *Id.* The victim's fiancé armed himself with a knife, and the two proceeded toward the bridge. *Id.* The victim saw the petitioner standing outside the Mapco, and she and her fiancé "approached police officers who were parked in their patrol cars across the street from the Mapco." *Id.* After telling the officers what had happened and identifying the petitioner as the perpetrator, the officers arrested the petitioner. *Id.* Law enforcement officers who later examined the abandoned house located the items the victim had described, including, among other things, a beer bottle, a folding knife, a bra, and a light fixture. *Id.*, slip op. at 17.

The victim was transported to the hospital and then to the Mid-South Sexual Assault Resource Center for an examination. The victim had multiple injuries to her head, her upper body, her hands, and her legs. *Id.*, slip op. at 7, 10, 13, 18. A penile swab taken from the petitioner "revealed a 'partial DNA profile'" which was "'consistent with the mixture of genetic material' from the victim and the [petitioner]." *Id.*, slip op. at 20. Although the Tennessee Bureau of Investigation agent who performed the testing was unable to say "'to the exclusion of all other people'" that the DNA profile from the swab belonged to both the victim and the petitioner, she confirmed that "'it's consistent with the two.'" *Id.*

The petitioner chose not to testify and did not present any proof. *Id.*, slip op. at 20. A Shelby County Criminal Court jury convicted the petitioner of six counts of aggravated rape. *Id.*, slip op. at 1. The trial court merged the alternative counts, entered three judgments of conviction, and imposed a total effective sentence of 65 years' incarceration. *Id.* This court affirmed the judgments on direct appeal. *Id.*

On May 30, 2013, the petitioner filed, pro se, a timely petition for post-conviction relief. Following the appointment of counsel and the amendment of the petition, the post-conviction court held an evidentiary hearing on April 16, 2014.

The petitioner testified that, on the evening of December 16, 2009, he was "smoking crack" with the victim and a woman named Ann; the petitioner stated that he did not know Ann's last name but that "the neighborhood called her Auntie." According to the petitioner, he requested that trial counsel locate Ann to testify on his behalf but that trial counsel failed to do so. The petitioner admitted that he did not have an address for Ann but that he "knew what house and everything she stayed in" which was "in the vicinity where everything supposed to had happened at."

The petitioner stated that trial counsel failed to visit and photograph the crime scene, which the petitioner claimed would have proven that the alley referenced by the victim did not exist; that trial counsel failed to hire a private investigator; that trial counsel failed to hire an independent expert witness; and that trial counsel failed to seek DNA testing on the petitioner's clothing. The petitioner testified that trial counsel met with him "maybe two, maybe three times" in the nearly two years that trial counsel represented him, and the petitioner denied that trial counsel discussed trial strategy with him.

On cross-examination, the petitioner admitted that he gave a signed statement to law enforcement officers shortly after his arrest in the early morning hours of December 17 and that, in his statement, he claimed to have engaged in consensual sexual intercourse with the victim, whom he knew as "Slim." The petitioner did not provide law enforcement officers with the names of the victim or her fiancé, and he did not mention anyone by the name of Ann. The petitioner also admitted that he told law enforcement officers that he had "slapped" the victim, and he acknowledged that trial counsel attempted to demonstrate to the jury at trial that things "couldn't have happened the way the victim said it happened." With respect to trial counsel's failure to call Ann as a witness at trial, the petitioner conceded that Ann was not present to testify at his post-conviction hearing.

Trial counsel testified that he had 14 years of experience as a public defender and that the petitioner's case was not his first aggravated rape trial. Although he was unable to recall the exact number of occasions on which he met with the petitioner, trial counsel testified that he "would have visited him in jail a number of times in the two week period leading up to the trial" and that he "would have had some prior jail visits" as well.

Trial counsel had a "vague recollection" that the petitioner had mentioned a witness who was present while he and the victim were allegedly using drugs together on December 16 but that the witness was not present when the petitioner and the victim engaged in consensual intercourse. Moreover, trial counsel advised the petitioner that the court was unlikely to allow a witness to testify as to the alleged character of the victim as a prostitute and a drug-user.

With respect to the petitioner's claim that trial counsel should have visited and photographed the area near the crime scene to prove that the victim gave an erroneous street address for the crime scene, trial counsel explained that he was familiar with the area and that just because the victim mentioned the wrong street name, such an error would not be enough to exonerate him.

Trial counsel testified that his strategy focused primarily on inconsistencies in the victim's statement to law enforcement officers and the fact that DNA evidence from the victim's underwear was not a match to the petitioner.

With this evidence, the post-conviction court denied relief, noting the inherently circumstantial nature of the case and finding no evidence that trial counsel was unprepared or that there was "anything that he could have done that . . . would have resulted in a different verdict with this jury." The post-conviction court was unconvinced that "Ann" would have been able to provide the petitioner with an alibi or that trial counsel could have accomplished anything further by seeking more DNA testing.

On appeal, the petitioner reiterates his claim of ineffective assistance of counsel, contending that trial counsel was ineffective by failing to call "Ann" as an alibi witness and by failing to procure an independent expert witness to test the petitioner's clothing. The State responds that the post-conviction court properly denied relief because the petitioner failed to call either "Ann" or an expert as a witness at the post-conviction hearing.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no

deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to relief via a claim of ineffective assistance of counsel, the defendant must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the defendant fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the defendant the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the trial court's factual findings, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record supports the post-conviction court's denial of relief. The petitioner failed to present either "Ann" or an expert witness at the evidentiary hearing. As such, we cannot speculate what either witness might have testified to at trial. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). The petitioner encourages this court to depart from this firmly-held rule, arguing that trial counsel's failure to procure the requested witnesses should not be held against the petitioner. This argument fails for two reasons. First, that trial counsel did

not present the testimony of witnesses requested by the petitioner at trial does nothing to change the fact that the petitioner failed to present the testimony of those witnesses at the post-conviction evidentiary hearing, as required by *Black*. Second, trial counsel's reasoning for not calling these witnesses – that "Ann" would not have provided the petitioner with an alibi and that the DNA evidence presented by the State was already sparse – was a "reasonably based trial strategy" that we will not "second-guess." *See Adkins*, 911 S.W.2d at 347. As such, we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.

The petitioner failed to establish that he was denied the effective assistance of counsel at trial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE